**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bachir Abdouni, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NetJets Aviation Inc., an Ohio Corporation<br><br>Defendants. | No. CV18-1935-PHX DGC<br><br>**ORDER** |

Plaintiff Bachir Abdouni brings suit against Defendant NetJets Aviation Inc. ("NetJets"). Plaintiff claims that NetJets (1) discriminated against him because of his race (Arab-Lebanese), (2) created a hostile work environment, and (3) retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. Doc. 25. NetJets moves to dismiss all claims. Doc. 27. The motion is fully briefed, and neither party has requested oral argument. Docs. 27, 34, 35. The Court will grant the motion in part and deny it in part.

**I.   Background.**

Plaintiff alleges the following facts, which are assumed true for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff is a pilot of Middle Eastern descent and has been employed by NetJets since 1997. Doc. 25 at ¶ 11. He has not been disciplined or counseled for performance issues or other misconduct during his employment. *Id*. at ¶ 28. In 2016, Plaintiff won a bid for a new flight assignment and was

required to pilot a flight alongside a copilot familiar with the new assignment, who would evaluate his performance. *Id*. at ¶ 13.

Plaintiff embarked on the trans-Atlantic training flight with copilot Charles Hake, who is Caucasian, in May 2017. *Id*. at ¶ 14. During the outbound and return flights, Hake repeatedly antagonized Plaintiff by berating him and questioning his experience and competence. *Id*. at ¶ 15. After the flight, Hake told NetJets that Plaintiff left the cockpit and sat in the passenger cabin for an extended period during the trip. Doc. 25 at ¶ 17. Plaintiff told NetJets that Hake's allegations were false and that Hake antagonized Plaintiff throughout the flight. *Id*. at ¶¶ 17-23. NetJets immediately placed Plaintiff on administrative leave. Doc. 25 at ¶¶ 17-18.

Throughout his leave, Plaintiff repeated his story to NetJets, his supervisors, and managers. *Id*. He asked that NetJets verify Hake's allegations by questioning a flight attendant who would corroborate Plaintiff's account. *Id*. NetJets failed to do so and did not take any disciplinary action against Hake. *Id*. at ¶ 24. About six months later, NetJets told Plaintiff that he had to sign a Last Chance Agreement ("LCA") if he did not want his employment terminated. *Id*. at ¶¶ 25-27. Plaintiff signed the agreement because he feared losing health insurance coverage for his wife, who was receiving treatment for Stage IV Cancer. *Id*.

Since returning to work, Plaintiff has received heightened and unfair scrutiny and less favorable assignments. *Id*. at ¶¶ 29, 35-37. In March 2018, Hake told supervisors and coworkers that Plaintiff was a "Jihadist" who would intentionally crash a NetJets plane. *Id*. Although Hake's comments were reported to NetJets in May 2018 and he continues to make false and defamatory statements about Plaintiff to supervisors and coworkers, NetJets has yet to discipline him. *Id*.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), on November 8, 2018. *Id*. at ¶ 43.

**II. Discussion.**

Counts 1 and 4 allege race discrimination claims under 42 U.S.C. § 1981 and Title VII. Counts 2 and 5 allege hostile work environment claims under § 1981 and Title VII. Counts 3 and 6 allege retaliation claims under § 1981 and Title VII. Counts 7 and 8 seek declaratory and injunctive relief regarding the LCA.

### A. Preemption Under the Railway Labor Act.

NetJets argues that Counts 7 and 8, and all of Plaintiff's § 1981 claims (Counts 1-3), are preempted under the Railway Labor Act ("RLA") because they are "minor labor disputes" stemming from the LCA, which in turn is governed by a collective bargaining agreement ("CBA"). Doc. 27 at 4. The Court does not agree.

The RLA generally preempts claims that require interpretation of a CBA. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994). Whether claims are preempted depends on the source of the rights asserted. *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032 at * 5 (N.D. Cal. Feb. 19, 2013) (citing *Espinal v. Northwest Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996)). The RLA does not preempt claims that seek to enforce rights and duties not created or defined by a CBA – rights that are independent of the CBA. *Hawaiian Airlines*, 512 U.S. at 256-58.

NetJets asserts that Counts 7 and 8 are preempted because they directly attack the LCA, and an attack on the LCA is essentially an attack on the CBA, which is preempted. But NetJets never makes the connection between the LCA and CBA. Without explaining why, NetJets makes a conclusory assertion that the "LCA . . . is governed solely by and depends entirely on interpretation of the CBA." Doc. 27 at 11-13. Absent any clear indication that litigation of Counts 7 and 8 would require the Court to interpret the CBA, the Court cannot conclude that these claims are preempted.

In support of its argument that Plaintiff's § 1981 claims are preempted, NetJets cites two district court cases. But both cases required the courts to directly interpret a CBA. *See Lee v. Norfolk S. Ry. Co.*, 912 F. Supp. 2d 375, 380 (W.D.N.C. 2012) ("The resolution of these claims necessarily involves the construction of the terms of the [CBA], a process

which would intrude into the RLA's federal mechanism for interpreting and enforcing collective bargaining agreements in the railroad industry."); *Evans v. Cent. of Georgia R. Co.*, 619 F. Supp. 1364, 1368 (N.D. Ga. 1985) ("The gravamen of the plaintiff's § 1981 claims is that the disciplinary and work provisions of his collective bargaining agreements have been applied by the defendant in a discriminatory manner."). As with Counts 7 and 8, the Court cannot conclude that Plaintiff's § 1981 claims will require interpretation of the CBA. The Court will not at this stage dismiss these claims on RLA preemption grounds.

### B. Counts 1 and 4 – Race Discrimination.

Section 1981 and Title VII each prohibit employers from discriminating because of race and national origin. *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 536 (9th Cir. 1982); *Metoyer v. Chassman*, 504 F.3d 919, 930, 935 (9th Cir. 2007). The Ninth Circuit uses the same legal principles to analyze claims under both statues. *Metoyer*, 504 F.3d at 930-35. To state a prima facie claim, Plaintiff must allege that (1) he belongs to a protected class, (2) he performed according to his employer's legitimate expectations, (3) his employer took an adverse employment action against him, and (4) similarly situated nonminority employees received more favorable treatment. *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 690-91 (9th Cir. 2017).

#### 1. Count 1 – Section 1981.

NetJets asserts that Plaintiff's § 1981 race discrimination claim fails because he does not allege enough facts to show that NetJets took an adverse employment action against him, and does not identify a similar nonminority employee favored by NetJets.

Adverse employment actions include transferring an employee's job, giving undeserved performance ratings, issuing unfavorable job references, hampering promotion, denying secretarial support, imposing a more burdensome schedule, and "any other materially adverse change in the terms and conditions of employment." *Ray v. Henderson*, 217 F.3d 1234, 1240-43 (9th Cir. 2000). Plaintiff alleges that he was placed on administrative leave for six months and, upon his return, was forced to sign the LCA,

which caused him to give up valuable employment rights. Doc. 25 at ¶¶ 17-18. These allegations sufficiently allege adverse employment actions.

Plaintiff also alleges that Hake and he were NetJets pilots who engaged in similar conduct: each complained about the other's conduct during the transatlantic training flight. In response, NetJets placed Plaintiff on administrative leave, forced him to sign the LCA, and gave him less favorable work assignments, while Hake (a Caucasian) suffered no consequences. Doc. 25 at ¶¶ 24-30. These allegations sufficiently allege that NetJets treated Plaintiff less favorably than a similarly situated nonminority employee. NetJets identifies various factual distinctions between Plaintiff and Hake, but such fine factual distinctions should be addressed at summary judgment or trial, not in a Rule 12(b)(6) motion where Plaintiff's allegations are taken as true. The Court will deny the motion to dismiss Count 1.

### 2. Count 4 – Title VII.

NetJets asserts that Plaintiff's Title VII discrimination claim fails because it relies on adverse employment actions that occurred more than 300-days before the filing of his EEOC charge on November 8, 2018, and therefore are time-barred. Doc. 27 at 4. Title VII bars claims based on discrete discriminatory acts that occur more than 300-days before an EEOC Charge is filed. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002); *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016). A discrete act is one that "occurred" on the day it "happened." *Morgan*, 536 U.S. at 111, 114. Examples include termination, failure to promote, denial of transfer, or refusal to hire. *Id.* Plaintiff argues that the LCA, although signed more than 300 days before his EEOC charge was filed, is not a discrete act but a material change to his employment that will remain active for the duration of his employment. Doc. 34 at 10.

It appears true that the LCA will continue to govern Plaintiff's employment, but there is a difference between the lingering effects of an earlier discriminatory act and a series of new discrete acts, each of which starts a new clock for filing charges. *Morgan*, 536 U.S. at 113. NetJets' demand that Plaintiff sign the LCA occurred at a specific point

in time, as did the actual signing of the document. Plaintiff does not dispute that these events occurred more than 300 days before he filed his EEOC charge. Although the LCA remains in effect, Plaintiff does not identify any new specific events related to it, such as an amendment to the LCA or its triggering of new acts or events. Plaintiff merely alleges that he continues to be employed under the LCA, much as a plaintiff who was denied a promotion on discriminatory grounds could claim that be continues to be employed without the promotion. The Supreme Court has made clear, however, that "mere continuity of employment, without more, is insufficient to prolong the life of" an employment discrimination claim. *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980). A Title VII plaintiff must identify "the alleged discriminatory *acts* that continued[.]" *Id.* (emphasis added). Plaintiff has failed to do so.

Alternatively, Plaintiff argues that he continues to suffer heightened training scrutiny and unfavorable work assignments, and continuing defamatory statements by Hake. Doc. 34 at 10. Hake's continuing comments, although they may support a hostile work environment claim, cannot be viewed as adverse employment actions by NetJets. And Plaintiff does not plead facts to show that heightened scrutiny and less favorable work assignments rise to the level of adverse employment actions, or that they occurred less than 300 days before his EEOC charge. The Court will grant the motion to dismiss Count 4.

**C.     Counts 2 and 5 – Hostile Work Environment.**

To state a claim for hostile work environment under Title VII and § 1981, Plaintiff must show that (1) he was subjected to verbal or physical conduct because of his race, national origin, or religion, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003); *Kang v. U. Kim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002). NetJets argues that Plaintiff's § 1981 hostile-work-environment claim should be dismissed because Hake's allegedly discriminatory comment relates to religion, not race. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1167 n.3 (9th Cir. 2007) ("It is well established . . . that § 1981 does

not apply to claims of religious discrimination."). In the alternative, NetJets argues that Hake's comment was not severe enough to create a hostile work environment.

The Court cannot agree that Plaintiff's § 1981 claim fails because Hake's comment related to Plaintiff's religion. Calling someone a Jihadist because he is Muslim is distinct from calling him a Jihadist because he has Middle Eastern lineage. A comment based on lineage could be a form of ethnic or national origin discrimination. NetJets provides no support for its argument that Hake's comment was based on Plaintiff's religion, and the facts alleged in the complaint do not show whether Hake even knew Plaintiff's religion.

For purposes of the § 1981 claim, which is not limited to the 300-day period before Plaintiff asserted his claim, the complaint alleges that Plaintiff was placed on leave for six months, forced to sign the LCA under duress, subject to a work environment as a pilot where Hake was claiming he was a Jihadist who would intentionally crash one of NetJets' planes, conduct that continues to this day. Doc. 25 at ¶¶ 24-30, 35-37. These allegations suggest a sufficiently pervasive and continuing course of conduct to state a claim for a hostile work environment.

The same is true for the Title VII claim. Although most of the acts described in the preceding paragraph occurred before the 300-day period, a hostile work environment claim is timely if one act that is part of a single course of conduct falls within the 300-day period. *Morgan*, 536 U.S. at 118 ("Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment."). The Court will deny the motion to dismiss Counts 2 and 5.

**D.  Counts 3 and 6 – Retaliation under § 1981 and Title VII.**

To state a retaliation claim under § 1981 and Title VII, Plaintiff must allege that (1) he engaged in a protected activity, (2) NetJets took adverse employment action against him, and (3) NetJets would not have acted but for a design to retaliate. *Nilsson v. City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570

U.S. 338, 364 (2013). NetJets argues that Plaintiff failed sufficiently to plead facts showing he engaged in protected activity. The Court does not agree.

An employee engages in "protected activity" when he complains about or protests conduct he reasonably believes constitutes an unlawful employment practice. *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (citing *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983)). Plaintiff alleges that he complained to supervisors and managers about Hake's conduct and the fact that he was being treated differently than Hake, and that these complaints began the day he returned from the trans-Atlantic flight and continued "on multiple occasions in the weeks and months that followed." Doc. 25, ¶¶ 19-20. These allegations sufficiently allege that Plaintiff engaged in protected activity.

NetJets also argues that Plaintiff did not sufficiently plead facts to show that he suffered an adverse employment action because of his protected conduct. The Court does not agree with respect to the § 1981 claim. Plaintiff alleges that, after the complaints mentioned above began, he was continued on administrative leave for an unreasonable period of six months and was forced to sign the LCA under duress. Doc. 25 at ¶¶ 24-30. These allegations sufficiently state a claim for retaliation under § 1981.

As discussed above, however, Plaintiff does not identify any adverse employment action that occurred within the 300-day period before he asserted his discrimination claims. As a result, Plaintiff's Title VII retaliation claim is time-barred. The Court will deny the motion to dismiss Count 3 and grant the motion to dismiss Count 6.

**E.     Waiver.**

NetJets argues that Plaintiff cannot base his claims on events preceding the LCA because he released all claims based on those events in the LCA. Doc. 27 at 4. Plaintiff responds that the LCA is void because he signed it under duress – threat of termination and fear of losing health coverage for his ill wife. Docs. 25 at ¶¶ 25-27; 34 at 12. If the LCA is found unenforceable because it was signed under duress, it obviously will not be a source

of waiver for Plaintiff's remaining claims. The Court cannot dismiss the remaining claims on waiver grounds now.

**IT IS ORDERED:**

1. NetJets' motion to dismiss (Doc. 27) is **granted in part and denied in part**. The motion is **granted** as to Counts 4 and 6, and otherwise **denied**.

2. Because Plaintiff has filed numerous amended complaints, further leave to amend will not be granted.

3. The Court will enter a separate case management order.

Dated this 4th day of March, 2019.

_David G. Campbell_
David G. Campbell
Senior United States District Judge